By the Court, Bronson, J.
The first section of the act of 1829, “to preserve the purity of elections,” is in these words: “ It shall not be lawful for any candidate for an elective office, with intent to promote his election, or for any other person, with intent to promote the election of any such candidate, either, 1st. To provide or furnish entertainment at his expense to any meeting of electors, previous to, or during the election at which he shall be a candidate: or, 2d. To pay for, procure, or engage to pay for any such entertainment: or 3d. To furnish any money or other property to any person, for the purpose of being expended in procuring the attendance of voters at the polls: or 4th. To engage to pay any money, or deliver any property, or otherwise compensate any person for procuring the attendance of voters at the polls: or 5th. To contribute money for am/y other purpose intended to promote an election of any particular person or ticket, except for defraying the expenses of printing, and the circulation of votes, handbills, and other papers previous to any such election.” The third section declares, that “ every person offending against the provisions of this act shall be deemed guilty of a misdemeanor.” (Stat. 1829, p. 565, ch. 373.) (a) If, at the time the promise was made, it would have-been unlawful for the defendant “ to contribute money” for the purpose of preserving and keeping open the log cabin, it is quite clear that his promise to pay money for that purpose at a future day cannot be enforced. Now, to what end was the log cabin to remain? The plaintiff tells us in the declaration that the building, besides the sale of refreshments, was “ intended and calculated/or public and other meetings of a certain political party, known and designated by the name of the whig party;” and the consideration for the promise was, that the plaintiff would not tear down or remove the log cabin, but would suffer the same to remain, and would keep or cause the same to be kept open “for the benefit of the said whig party *31 until after the election” of members of congress, presidential electors &c. The plaintiff then avers that he performed the agreement on his part; and so is the proof. The witness says, “ the log cabin was kept open until after the election, and was used by the whig party for political meetings, and it was the whig head quarters, in a measure. It was kept open to promote the election of the electoral ticket in favor of General Harrison for president.” The statute, after forbidding several things, declares that money shall not be contributed “ for any other purpose intended to promote an election of any particular person or ticket.” It requires no argument to prove that this money was to be paid to promote the election of particular persons, to wit, General Harrison, and the whig candidates for congress &c.; and a particular ticket, to wit, the electoral ticket in favor of General Harrison for president, and the ticket for whig members of congress &c. The parties intended to accomplish the very thing which the statute declares to be illegal. No one can wink so hard as not to see it. Every contribution of money “ intended to promote an election of any particular person or ticket” is forbidden, except “ for defraying the expenses of printing, and the circulation of votes, handbills, and other papers previous to any such election.” There can be little doubt that large sums of money are expended upon elections for other purposes; but the statute says, “ it shall not be lawful” to do so, and the enactment should either be enforced or repealed.
It is said that the statute only forbids the contribution of money for corrupt purposes. But the statute says nothing about corruption. It declares that the thing shall not be done. With two specified exceptions, it provides that money “intended to promote an election” shall not be contributed. The legislature evidently thought that the most effectual way “ to preserve the purity of elections,” was to keep them free from the contaminating influence of money. They said, you may contribute money to pay for printing and circulating votes and information, but not for any other purpose.
If this contract is void, it is said that money cannot be contributed to hire a room for holding political meetings. That is *32 undoubtedly true, if the object be “to promote an election of any particular person or ticket.” I will not discuss the policy of the law. The legislature have said that the thing shall not be done, and that is enough.
Judgment reversed.

 1 R, S. 136, 7, 2d ed.